IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ALLEN CRISPIN FUENTES,    *
                          *
        Plaintiff,        *
                          *
    v.                    *          CV 125-064
                          *
RICHARD ROUNDTREE, et al.,*
                          *
        Defendants.       *
                          *

ORDER

Before the Court are Defendants' motion to dismiss Plaintiff's original complaint (Doc. 5) and Defendants' motion to dismiss Plaintiff's amended complaint (the "Amended Complaint") (Doc. 8). For the following reasons, the Defendants' motion to dismiss Plaintiff's original complaint (Doc. 5) is **DENIED AS MOOT**[1] and Defendants' motion to dismiss the Amended Complaint (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for unlawful search and seizure under the Fourth Amendment, excessive

---

[1] On June 6, 2025, Plaintiff filed the Amended Complaint. (Doc. 7.) "It is well-established that an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect." Renal Treatment Ctrs.- Mid-Atl.-, Inc. v. Franklin Chevrolet-Cadillac-Pontiac-GMC, No. 608CV087, 2009 WL 995564, at *1 (S.D. Ga. Apr. 13, 2009) (quoting In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005) and citing Fritz v. Standard Sec. Life Ins., 676 F.2d 1356, 1358 (1982)). As such, the motion to dismiss the original complaint (Doc. 5) is **DENIED AS MOOT**.

force under the Fourth Amendment, retaliation under the First Amendment, malicious prosecution, and supervisor liability. (Doc. 7, at 9-20.) On March 25, 2023, Plaintiff attended the Spring Latin Fest in Augusta, Georgia with his wife, their children, and his brother. (Id. at 3.) At the festival, Plaintiff saw a man slap a crying baby with "abusive force" in the presence of the baby's mother. (Id.) Plaintiff reported this incident to Defendant Hester, an employee of the Richmond County Sheriff's Office ("RCSO"), who was working a special security assignment for the event. (Id.) Defendant Hester did nothing after seeing the couple walk away. (Id.) Plaintiff then asked for Defendant Hester's name and badge number because "he wanted to report his failure to take action to protect the child and the report of a crime." (Id. at 4.) Plaintiff and Defendant Hester exchanged words as Plaintiff and his family started walking to his car. (Id.) Plaintiff said, "You're sorry as f*** [for not doing anything about it]." (Id. (alterations in original).) Defendant Hester arrested Plaintiff for disorderly conduct, but Plaintiff states he did not threaten or hit Defendant Hester. (Id.) Although Defendant Hester was supposed to have his video camera on during encounters with the public, it did not record the incident due to a malfunction. (Id. at 13.)

On the citation, Defendant Hester stated he arrested Plaintiff for cussing, being loud, and intoxication. (Id. at 4.)

2

However, the notice of the charges Plaintiff received from Defendant Hester did not state intoxication as a reason for the arrest. (Id.) After a jury trial, Plaintiff was acquitted. (Id. at 6.) Plaintiff asserts the acquittal was because Defendant Hester produced no evidence of intoxication to support the citation. (Id.)

Plaintiff also asserts that RCSO agents, including Defendant McNeil, among others, executed a "facially invalid [warrant] without limitation in time or scope" at his wife's job. (Id. at 7.) Even though Plaintiff's wife was not charged with a crime, the RCSO agents seized her phone, extracted its contents, and accessed Plaintiff's personal information. (Id. at 7-8.) The cellphone contained a video of Plaintiff's arrest that his wife recorded on her cellphone. (Id. at 7.) Plaintiff states Defendant Hester applied for the search warrant and directed the agents to seize the phone. (Id. at 7-8.)

Plaintiff seeks injunctive relief and damages including, but not limited to, compensatory damages for injuries sustained, punitive damages, and attorney's fees and costs. (Id. at 20-21.) On June 20, 2025, Defendants filed a motion to dismiss. (Doc. 8.) On July 7, 2025, Plaintiff responded. (Doc. 9.) On July 21, 2025, Defendants replied in support. (Doc. 14.) The motion is ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual

4

allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

Plaintiff brings claims for unlawful search and seizure against Defendants Hester and McNeil, excessive force against Defendant Hester, retaliation against Defendants Hester and McNeil, malicious prosecution against Defendants Hester and McNeil, and supervisor liability against Defendants Roundtree and Brantley. (Doc. 7, at 9-20.) All claims against Defendants Hester and McNeil are in their individual capacities, and the claims against Defendants Roundtree and Brantley are in their individual and official capacities. (Id.) Defendants argue Plaintiff has failed to state a claim against Defendant McNeil in his individual capacity only for the unlawful search and seizure and against Defendants Roundtree and Brantley in their individual and official capacities. (Doc. 8, at 2-7.)

### A. Defendants Roundtree and Brantley

Plaintiff asserts § 1983 claims against Defendants Roundtree and Brantley in their official and individual capacities. (Doc. 7, at 16-22.) The Court evaluates each claim in turn.

5

### 1. Official Capacities

Plaintiff asserts official capacity claims for monetary and injunctive relief against Defendant Roundtree as the former Sheriff of Richmond County and Defendant Brantley as the current Sheriff of Richmond County. (Id. at 16, 19-20.)

#### a. *Monetary Damages*

Defendants Roundtree and Brantley argue the Eleventh Amendment bars suits against a state, which includes Plaintiff's claims against them in their official capacities. (Doc. 8, at 2, 6.) Defendants Roundtree and Brantley argue that, as "arms of the state when acting in a law enforcement capacity," "suits against them in an official capacity are suits against the state." (Id. at 2 (citations omitted).) As the Richmond County Sheriff at the time of Plaintiff's arrest, Defendant Roundtree states he was acting pursuant to state authority when training and supervising employees. (Id. at 3 (citing O.C.G.A. § 15-16-23).) Defendant Brantley argues he was not elected Richmond County Sheriff until after Plaintiff's arrest, so there is no causal connection to his actions. (Id. at 5-6.) Plaintiff did not respond to Defendants Roundtree and Brantley's motion to dismiss claims for monetary damages in their official capacities.

The Court finds that Plaintiff's claims against Defendants Roundtree and Brantley in their official capacities should be dismissed because Defendants Roundtree and Brantley are subject to

6

Eleventh Amendment immunity.  The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).  Eleventh Amendment immunity may be asserted not only by state officers and state officials, but by all persons "acting as an 'arm of the State,' which includes agents and instrumentalities of the State." Id. (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)).  The determination of "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. (citation omitted). Relevant here,

> where a sheriff and his deputies are performing their official and authorized duties as state actors — i.e. engaged in general law enforcement functions or making arrests pursuant to state law - they are entitled to Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against them in their official capacities.

Frederick v. Brown, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) (citing Manders, 338 F.3d at 1328).

Here, the State of Georgia is the real party in interest in a suit against Defendants Roundtree and Brantley in their official capacities as RCSO employees. See Hampton v. Peeples, No. 6:14-CV-104, 2016 WL 128539, at *2 (S.D. Ga. Jan. 12, 2016) (citing

Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989)).  As the Sheriff during Plaintiff's arrest, Defendant Roundtree was acting pursuant to state authority in his official capacity.  Accordingly, the Eleventh Amendment immunizes Defendant Roundtree from suit for monetary damages in his official capacity absent a waiver of immunity.  Moreover, Defendant Brantley was not the RCSO Sheriff at the time of Plaintiff's arrest, and thus, was not in his official capacity for purposes of Plaintiff's damages claim. Therefore, the Court finds Plaintiff cannot sustain any constitutional claims for monetary relief against Defendants Roundtree and Brantley in their official capacities.

### b. Injunctive Relief

Plaintiff also seeks injunctive relief against Defendants Brantley and Roundtree in their official capacity.  (Doc 7, at 17, 19.)  As for Plaintiff's possible injunctive relief claim against Defendant Roundtree, Defendants argue Defendant Roundtree is no longer the Sheriff of Richmond County, so there is no future conduct to enjoin.  (Doc. 8, at 3.)  Plaintiff concedes he does not seek injunctive relief against Defendant Roundtree.  (Doc. 9, at 7.)  Plaintiff's complaint states "Plaintiff seeks injunctive relief to correct [the] policies, customs, and practices that allow [Defendant Brantley's] officers to arrest citizens without probable cause or even reasonable suspicion and for exercising their constitutional right to criticize the police."  (Doc 7, at

19.)  Plaintiff also alleges Defendant Brantley "kn[ew] or should have known of deputies making false claims that their cameras were not recording during encounters or deactivating their camera during encounters to hide evidence prejudicial to them." (Id.) Defendants argue Plaintiff failed to establish supervisory liability claims, so there is no continuing violation to award injunctive relief. (Doc. 8, at 6.)

Plaintiff argues prospective injunctive relief is proper "not only to remedy the harm done to [Plaintiff], but to ensure that going forward citizens are protected and RCSO are promoted for doing right, not wrong." (Doc. 9, at 7.)  Plaintiff also claims the RCSO's "written policies prohibiting this type of misconduct at issue . . . were treated as a nullity." (Id. at 3.)  Further, Plaintiff argues "Defendants Roundtree and Brantley failed to impose any consequences on deputies who routinely violated policy [and] even promoted those same individuals." (Id.)  Specifically, Plaintiff asserts either Defendant Roundtree or Brantley promoted Defendant Hester "despite his clear violation of Plaintiff's constitutional rights" and instead of taking "reasonable steps to deter such behaviors." (Doc. 7, at 19.)

There is an exception to the Eleventh Amendment immunity doctrine that applies to injunctive relief. "[A] suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis

9

is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing Ex Parte Young, 209 U.S. 123, 168 (1908); Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004)). "To determine whether Ex [P]arte Young permits a suit against a state official, we 'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Attwood v. Clemons, 818 F. App'x 863, 867 (11th Cir. 2020) (alteration in original) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)). This inquiry "does not include an analysis of the merits of the claim." Verizon Md., 535 U.S. at 646 (citation omitted). The Eleventh Circuit provided:

> Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the Young court held, it is sufficient that the state officer sued must, "by virtue of his office, ha[ve] some connection" with the unconstitutional act or conduct complained of. "[W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists."

Luckey v. Harris, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (alterations in original) (quoting Young, 209 U.S. at 157).

Defendants have not shown Plaintiff's claims for injunctive relief are barred. Plaintiff alleges unconstitutional actions and RCSO policy violations including arresting citizens without

10

probable cause or reasonable suspicion and failing to record encounters. (Doc. 7, at 17, 19.) Plaintiff states Defendant Brantley "failed to take reasonable steps to deter such behaviors," and "deputies routinely violate the policies without consequence." (Id. at 19.) As a result, Plaintiff "seeks injunctive relief to correct these policies, customs, and practices." (Id.) Thus, Plaintiff alleges "an ongoing violation of federal law and seeks relief properly characterized as prospective." Attwood, 818 F. App'x at 867 (citation omitted). Based on the injunctive relief exception to Eleventh Amendment immunity, Plaintiff has stated a sufficient claim for injunctive relief against Defendant Brantley in his official capacity; thus, this claim may proceed.

Accordingly, the Court **DISMISSES** Plaintiff's claims for monetary damages against Defendants Roundtree and Brantley in their official capacities and Plaintiff's claim for injunctive relief against Defendant Roundtree in his official capacity under § 1983. Plaintiff's claim for injunctive relief against Defendant Brantley in his official capacity shall proceed.

2. Individual Capacities

Plaintiff also asserts supervisory liability claims under § 1983 against Defendants Roundtree and Brantley in their individual capacities. (Doc. 7, at 16-20.) Defendants Roundtree and Brantley argue Plaintiff's supervisory liability claims fail. (Doc. 8, at 4-6.)

11

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Christmas v. Harris Cnty., 51 F.4th 1348, 1355 (11th Cir. 2022) (citations omitted). The necessary causal connection can be established by alleging

> [(1)] the existence of a custom or policy that resulted in deliberate indifference to the [victim's] constitutional rights, [(2)] facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or [(3)] a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citation omitted); see also Christmas, 51 F.4th at 1355. Causation also "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022) (citation omitted). "[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Piazza v. Jefferson Cnty., 923 F.3d 947, 957 (11th Cir. 2019) (citations omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the

12

conduct involves several subordinates.  Id. (citations omitted).

"The standard by which a supervisor is held liable in [his]

individual capacity for the actions of a subordinate is extremely

rigorous."  Braddy v. Fla. Dep't of Lab. & Emp. Sec., 133 F.3d

797, 802 (11th Cir. 1998).

> a. Defendant Roundtree

Defendants argue Plaintiff failed to state a claim against

Defendant Roundtree because his allegations of unconstitutional

arrests are insufficient to establish widespread policy violations

and state a claim for supervisory liability.  (Doc. 8, at 4.)

Defendants state, "Plaintiff's conclusory allegations do not

provide sufficient factual detail related to any widespread abuse

or a policy related to false arrests or any other constitutional

violations within the RCSO."  (Id. (citation omitted).)  Defendants

argue Plaintiff only alleges two isolated occurrences where an

individual was unconstitutionally arrested: Plaintiff's arrest and

the arrest of "John Doe" for "engaging in constitutionally

protected speech."  (Id. at 5.)  Defendants argue Plaintiff's

allegations about John Doe's arrest lacks specificity to

"establish any rampant or widespread abuse sufficient to state a

claim for supervisory liability."  (Id.)

Plaintiff states the RCSO deputies made widespread arrests in

violation of the First and Fourth Amendments.  (Doc. 9, at 2-3.)

Specifically, Plaintiff alleges RCSO deputies "routinely seek

general warrants and conduct searches" in violation of the Fourth Amendment and RCSO policies. (Id.) Plaintiff elaborates that deputies were "falsely claiming their cameras were not recording during encounters with civilians or deactivating their cameras to conceal incriminating or embarrassing evidence." (Id. at 3.) In alleging the arrests of himself and John Doe, Plaintiff argues he has "identified multiple retaliatory arrests, unjustified searches, and a systematic absence of internal oversight at RCSO." (Id. at 4.)

Plaintiff also argues Defendant Roundtree knew or should have known RCSO deputies were committing such violations and failed to enforce these policies or impose consequences on deputies who violated them. (Id. at 3.) Specifically, Plaintiff claims Defendant Hester violated these policies during Plaintiff's arrest, but Defendant Roundtree or Defendant Brantley failed to punish him and subsequently promoted him. (Id.) As a result, Plaintiff argues Defendant Roundtree's "failure to train, investigate, or correct the retaliatory, excessive, and unlawful actions of RCSO deputies amounts to . . . deliberate indifference . . . under § 1983." (Id. at 6.)

Plaintiff cites to Ingram to argue he stated a plausible claim for supervisory liability against Roundtree and Brantley. (Doc. 9, at 2.) In Ingram, "multiple reports of prior misconduct . . . with no investigation by" the sheriff provided a causal connection

14

between the sheriff's failure to investigate the misconduct and the officers' "belief that [they] could act with impunity." 30 F.4th at 1256 (internal quotations and citation omitted). Not only did the facts in Ingram include six total incidents of officer misconduct as opposed to Plaintiff's two instances, but the sheriff was also "fully informed," "copied on all use of force reports," and "routine[ly]" approved incidents "without any investigation." Id. at 1255. Here, unlike in Ingram, Plaintiff fails to allege Defendant Roundtree was informed of incidents other than his own arrest to support a history of widespread abuse. Id. at 1255-56.

Likewise, Plaintiff's argument that he stated a claim for supervisory liability under Smith, where the plaintiff's detailed allegations as to the supervisors' knowledge of policy violations was sufficient to state a claim, is unfounded. (Doc. 9, at 5 (citing Smith v. Wayne Cnty., 742 F. Supp. 3d 1350, 1372-73 (S.D. Ga. 2024)).) Unlike the Plaintiff in Smith, Plaintiff pled two instances of alleged unconstitutional arrests, Defendant Hester's promotion despite his alleged violation, and a conclusory allegation of Defendant Roundtree's "failure to supervise and discipline deputies." (Doc. 7, at 17).

The Court finds Plaintiff failed to allege "widespread abuse" to put Defendant Roundtree "on notice" of the alleged constitutional violations and establish a causal connection. Barr, 437 F. App'x at 875. Although Plaintiff's complaint pleads

15

his arrest and John Doe's arrest were in violation of the First and Fourth Amendments, Plaintiff fails to specify a "history of widespread abuse" within the RCSO. See id.; (Doc. 7, at 16.) Plaintiff only mentions one instance other than his own arrest and lacks specificity as to John Doe's identity, when the arrest took place, or the deputies involved in the arrest. (Id. at 17-18.) Further, Plaintiff's only argument to support Defendant Roundtree's notice of such violations is that Plaintiff's "arrest was a well-publicized event." (Doc. 9, at 3.) Plaintiff fails to provide sufficient allegations to support his failure to train claim without a connection between the actions of Defendants Roundtree as the supervising official and the actions of Defendant Hester or another identified RCSO deputies. See West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." (citation omitted)); Hawk v. Klaetsch, 522 F. App'x 733, 735 (11th Cir. 2013) ("fail[ing] to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse" which was necessary to hold police chief liable); Bivens v. Coffee Cnty., No. 5:21-CV-14, 2021 WL 3173598, at *6 (S.D. Ga. July 26, 2021) (finding a single incident other than plaintiff's arrest as insufficient to establish a custom or policy of widespread abuse

16

to put sheriff on notice of the need to correct constitutional violations).

Further, Plaintiff fails to allege a custom or policy that resulted in deliberate indifference to one's constitutional rights for supervisory liability. Temple v. McIntosh Cnty., No. 2:18-CV-91, 2019 WL 287482, at *6 (S.D. Ga. Jan. 22, 2019) ("The Eleventh Circuit has explained that a 'custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law' and '[d]emonstrating a policy or custom "requires show[ing] a persistent and wide-spread practice."'" (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007))). Plaintiff makes conclusory allegations that unconstitutional policies and widespread practices exist among RCSO deputies including arresting citizens without probable cause or reasonable suspicion, securing general warrants to search outside a reasonable scope, and deactivating cameras or falsely claiming cameras were not recording. (Doc. 7, at 17-19.) However, Plaintiff has not alleged any facts supporting these alleged policies and practices other than the allegations related to his arrest and to the unspecified encounter between John Doe and the RCSO.

Thus, Plaintiff fails to allege a "custom or policy that resulted in deliberate indifference to . . . constitutional rights" or "a history of widespread abuse that put the supervisor

17

on notice of an alleged deprivation that he then failed to correct." Barr, 437 F. App'x at 875 (citation omitted). As a result, the Complaint fails to state "a causal connection between the actions of [Defendant Roundtree] and the alleged constitutional deprivation" for supervisory liability. Christmas, 51 F.4th at 1355 (citations omitted). Therefore, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's supervisory liability claim against Defendant Roundtree in his individual capacity.

### b. Defendant Brantley

Next, Defendants argue Plaintiff failed to state a claim against Defendant Brantley for supervisory liability. (Doc. 8, at 5.) Defendants argue Plaintiff's complaint lacks a causal connection between Defendant Brantley's actions and an alleged constitutional violation suffered by Plaintiff. (Id.) Because Defendant Brantley took office after Plaintiff's arrest, Defendants argue he could not have directed any action connected to Plaintiff's arrest; thus, he cannot be liable for any constitutional violations of Defendants Hester or McNeil. (Id. at 5-6.) Moreover, Defendants argue Defendant Brantley could not have been on notice of any history of abuse at the RCSO during Plaintiff's arrest. (Id. at 6.) Plaintiff fails to outline constitutional violations by Defendant Brantley except for his "promotion of Defendant Hester immediately upon taking office."

18

(Doc. 9, at 6.) Plaintiff's complaint states identical allegations for Defendant Brantley as Defendant Roundtree such as "failure to supervise and discipline deputies who committed constitutional violatins." (Doc. 7, at 17-19.) Defendant Brantley argues that the allegation that "he may have promoted Defendant Hester after he took office" lacks a constitutional violation that occurred after the promotion for supervisory liability. (Doc. 14, at 2.)

The Court finds Plaintiff failed to state a constitutional violation with a causal connection to the actions of Defendant Brantley. Although Plaintiff alleges Defendant Brantley promoted Defendant Hester once he was elected, Plaintiff fails to state a constitutional violation causally connected to the action for supervisory liability. (Doc. 7, at 19.) As for Plaintiff's other arguments, Plaintiff repeats the same constitutional violations for Defendant Brantley as Defendant Roundtree even though Defendant Brantley was not the Richmond County Sheriff at the time of Plaintiff's arrest. (Id. at 17-19.) As such, Plaintiff's allegations of unconstitutional RCSO policies and practices fail to state a supervisory liability claim without a causal connection to Defendant Brantley, who was not the Sheriff until after Plaintiff's arrest. Thus, the Court **GRANTS** Defendants Roundtree and Brantley's motion to dismiss Plaintiff's supervisory liability claims.

19

## B. Plaintiff's Claim Against Defendant McNeil

Defendants argue Plaintiff's Fourth Amendment claim against Defendant McNeil fails because he lacks standing, as he did not suffer any injury at the hands of Defendant McNeil. (Doc. 8, at 7.) "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-34, (1978) (citations omitted). Thus, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Id. at 134 (citation omitted). The principle has come to be known as Fourth Amendment "standing." United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007).

To establish Fourth Amendment standing, a person must have "both a subjective and an objective expectation of privacy" in the item or place searched. Id. (citation omitted). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." Id. (citation omitted). A movant challenging a search bears the burden of satisfying both of these elements. Rakas, 439 U.S. at 130 n.1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." (citations

20

omitted)); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) ("The individual challenging [a] search bears the burdens of proof and persuasion." (citation omitted)). These requirements apply equally to the search of a cell phone. United States v. Gregg, 771 F. App'x 983, 986-87 (11th Cir. 2019) ("To have standing to challenge the search of a cell phone, a defendant bears the burden of establishing both a subjective and an objective expectation of privacy in its contents.") (internal quotation marks and citation omitted).

Defendants claim Plaintiff lacks standing against Defendant McNeil because he failed to allege he personally suffered any injury by Defendant McNeil's allegedly unlawful search of his wife's cellphone. (Doc. 8, at 7.) Defendants argue Plaintiff's only personal allegations related to an unlawful seizure are against Defendant Hester, who Plaintiff alleges arrested him. (Id.)

Plaintiff argues he "has standing to challenge the search and seizure of his wife's cellphone because it contained private, privileged communications between him and his spouse." (Doc. 9, at 6 (citation omitted).) Specifically, Plaintiff argues the communications on his wife's cellphone are protected under O.C.G.A. § 24-5-501(a)(1) and the Fourth and Fourteenth Amendments. (Id.) While Plaintiff alleges Defendant McNeil obtained a search warrant before searching the cellphone,

21

Plaintiff argues the warrant was not limited in time, subject matter, or scope. (Id. at 7; Doc. 7, at 7.) Because the search was an intrusion into Plaintiff's private life and privileged material communications, Plaintiff asserts the search was a direct injury against him. (Doc. 9, at 7.) Plaintiff cites McKie v. State, 165 Ga. App. 777 (1983)[2] and claims this case confirmed that "confidential communications between spouses are privileged, even when they may be probative of guilt." (Id.) Moreover, Defendants respond with persuasive case law to support that "a person does not have a reasonable expectation of privacy in their spouse's phone." (Doc. 14, at 5 (citing United States v. Milk, CR 16-50118, 2018 WL 587863, at *4 (D.S.D. Jan. 29, 2018), aff'd, 66 F.4th 1121 (8th Cir. 2023)).) Defendants argue that Plaintiff has not alleged any ownership or possession of his wife's cellphone, so he lacks standing and fails to state a claim of unlawful search or seizure against Defendant McNeil. (Id.)

The Court finds Plaintiff failed to present authority to support his claim that confidential marital communications extend to a search warrant of a cellphone. Even if Plaintiff alleged his confidential spousal communication rights were violated as to cellphone communications, he fails to specify what messages

---

[2] Based on the citation in Plaintiff's brief, the Court is unable to locate this case. (Doc. 9, at 7.) Alternatively, Plaintiff may have attempted to cite McKie v. State, 165 Ga. 210 (1927), where the Supreme Court of Georgia excluded letters of the defendant to her husband.

22

between him and his wife should be excluded under the confidentiality rules.

Nonetheless, the Court treats Defendants' argument as an ordinary challenge to standing. Here, Plaintiff alleges a claim for unlawful search and seizure over his wife's cellphone, which is "a third person's . . . property." Rakas, 439 U.S. at 134. Further, Plaintiff lacked "both a subjective and an objective expectation of privacy" in the contents on the cellphone because he states the cellphone belongs to his wife. King, 509 F.3d at 1341. As for the constitutionality of the search, Plaintiff argues the warrant application was not limited in time or scope, and thus unlawful. (Doc. 9, at 7.) However, without standing, Plaintiff cannot contest the search and seizure of his wife's cellphone. Thus, Plaintiff has failed to allege possession of the cellphone and lacks standing to challenge the search and seizure of it. As such, the Court need not decide whether the search of the cellphone may have violated the rights secured to someone else by the Fourth and Fourteenth Amendments. See Rakas, 439 U.S. at 150. Accordingly, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim for unlawful search and seizure against Defendant McNeil is **GRANTED**.

23

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's original complaint (Doc. 5) is **DENIED AS MOOT** and Defendants' motion to dismiss the Amended Complaint (Doc. 8) is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's supervisory liability claims against Defendants Roundtree and Brantley in their individual capacities, supervisory liability claim against Defendant Roundtree in his official capacity, and unlawful search and seizure claim against Defendant McNeil are **DISMISSED.** Plaintiff's remaining claims shall proceed and include claims for supervisory liability, specifically for injunctive relief, against Defendant Brantley in his official capacity; unlawful search and seizure, excessive force, first amendment retaliation, and malicious prosecution against Defendant Hester in his individual capacity; and first amendment retaliation and malicious prosecution against Defendant McNeil in his individual capacity.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of February, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

24